**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Mark Racek and Mary Racek, | Civil No. 12-380 (DWF/SER) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Gurstel Chargo, P.A., and Asset Acceptance, LLC, | |
| Defendants. | |

Mark L. Vavreck, Esq., Martineau, Gonko & Vavreck, PLLC, counsel for Plaintiffs.

Spencer J. Seamans, Gurstel Chargo, P.A., counsel for Defendants.

## INTRODUCTION

This matter is before the Court on a Motion for Partial Summary Judgment brought by Plaintiffs Mark and Mary Racek (Doc. No. 14), and a Motion for Summary Judgment brought by Defendants Gurstel Chargo, P.A. ("Gurstel") and Asset Acceptance, LLC ("Asset") (together, "Defendants") (Doc. No. 19.) For the reasons set forth below, the Court denies both motions.

## BACKGROUND

In this action, Plaintiffs assert that the Defendants' garnishment of their joint bank account, which contained exclusive property of a non-debtor, violates the Fair Debt Collection Practices Act ("FDCPA") and constitutes conversion. Mark Racek incurred a credit card debt which was placed for collection with Asset. (Doc. No. 1, Compl. ¶¶ 8-9;

Doc. No. Goltz Aff. ¶ 4.)  On April 4, 2009 and October 29, 2009, respectively, Gurstel[1] (on behalf of Asset) served and filed a state court action against Mark Racek for the amounts owed on the credit card account.  (Goltz Aff. ¶ 5, Ex. A.)  Mary Racek was not a named party in the state court action.  (*Id*.; Doc. No. 17, Vavreck Decl. ¶¶ 6, 7, Exs. 5, 6.)  On March 9, 2010, the state court entered a judgment against Mark Racek in the amount of $4,464.32 (the "Judgment").  (Compl. ¶ 10; Goltz Aff. ¶ 7, Ex. C.)

On November 30, 2011, Gurstel sent a garnishment summons, non-earnings disclosure, exemption notices, and a garnishee fee to Wells Fargo Bank on behalf of Asset.  (Goltz Aff. ¶ 8, Exs. D, E.)  On December 5, 2012, Gurstel served copies of these documents on Mark Racek.  (*Id*. ¶ 9, Ex. F.)  On the same day, counsel for Plaintiffs contacted Gurstel and was put in contact with Christopher Heino, the attorney handling Mark Racek's account.  (Vavreck Decl. ¶ 2, Ex. 1 at 5-6.)  Plaintiffs' counsel indicated that Mark Racek may have a valid exemption claim and requested a copy of the exemption form.  (*Id*.)  During the phone call, Plaintiffs' attorney explained that the account contained the wages of Mark Racek's wife (Mary Racek).  (*Id*.)  Mr. Heino indicated that he would send another copy of the exemption notice.  (*Id*. at 8, 10.)  Mr. Heino made a collection note regarding the December 5, 2012 phone call, noting that Plaintiffs' attorney stated that Mark Racek has a valid exemption claim, but did not otherwise mention that Plaintiffs' attorney had indicated that the garnished account contained wages paid to Mary Racek.  (*Id*. ¶ 3, Ex. 2 at 1.)

---

[1]   Gurstel is a law firm operating as a debt collector.  (Compl. ¶ 6.)

The exemption notice indicated that Mark Racek's funds had been garnished and that some money in the account may be protected (or exempt). (Goltz Aff. ¶ 8, Ex. D.) The notice further stated:

> The attached exemption form lists some different sources of money in your account that may be protected. If your money is from one or more of these sources, place a check on the line on the form next to the sources of your money. If it is from one of these sources, the Creditor cannot take it.
>
> **BUT, you must follow the instructions and return the exemption form and copies of your bank statements from the last 60 days** to have the bank unfreeze your money.
>
> If you do not follow these instructions or your Creditor gets an order from the Court or writ of execution, your financial institution will give the money to your Creditor. If that happens and it is protected, you can still get it back from the Creditor later, but that is not as easy to do as filling in the form now.
>
> . . .
>
> **NOTICE: YOU MUST SEND TO THE CREDITOR'S ATTORNEY** (OR TO THE CREDITOR, IF NO ATTORNEY) **COPIES OF YOUR BANK STATEMENTS FOR THE PAST 60 DAYS BEFORE THE GARNISHMENT.**
>
> . . .
>
> **BOTH COPIES MUST BE MAILED OR DELIVERED ON THE SAME DAY.**
>
> One copy of the form **and the copies of your bank statements** go to: Gurstel Chargo PA [provided address omitted].
>
> One copy of just the exemption form goes to: Wells Fargo Bank N.A. [provided address omitted].
>
> . . .
>
> **If You Send in the Exemption Form and Bank Statements:**

> Any money that is NOT protected can be turned over to the creditor once they get an order or writ of execution from the court.
>
> . . .
>
> **If the Creditor Does Not Object:**
>
> The financial institution will unfreeze your money six business days after the institution gets your completed form.

(*Id.*)

On December 9, 2011, a paralegal working with Plaintiffs' attorney sent an e-mail to Mr. Heino stating: "Subject: Asset Acceptance vs. Mark Racek . . . . Enclosed please find 2 bank statements in reference to the above named case." (Doc. No. 23, Seamans Aff. ¶ 3, Ex. B.) The attached bank statements were for the period of September 29, 2011 through November 29, 2011. (*Id.*) On December 23, 2011, the same paralegal sent another e-mail to Mr. Heino, copying briana.a.czer@wellsfargo.com, attaching a completed exemption form for Mark Racek. (*Id.* ¶ 3, Ex. C.) The exemption form indicated that all of the money frozen in the bank account is protected as "wife's wages." (*Id.*) Plaintiffs did not mail the exemption form or the bank statements to Gurstel or Wells Fargo at the addresses provided. (Seamans Aff. ¶ 7, Exs. G, H.) However, there is no dispute that Mr. Heino's inbox contained two e-mails from Plaintiffs' attorney. (Vavreck Decl. ¶ 13, Ex. 12 at 12.) Defendants acknowledge that the December 9, 2011 e-mail contained an attachment with Plaintiffs' bank statements, and that the December 23, 2011 e-mail contained an attachment with a completed garnishment exemption form. (*Id.*) There is no evidence, however, showing that Mr. Heino opened the e-mails or their attachments. (*Id.*) Nor is there any record of the e-mails or their

attachments in the legal software used by Gurstel to track its retail collection files. (Vavreck Decl. ¶ 3, Ex. 2.) Indeed, Plaintiffs point out that Mr. Heino acknowledged that he often ignored incoming e-mails. (Vavreck Decl. ¶ 16, Ex. 15 at 36.)

On December 27, 2011, a Gurstel attorney, on behalf of Asset, served a Notice of Levy on Garnished Sums and a Writ of Execution on Wells Fargo to secure the release of the garnished funds. (Goltz Aff. ¶ 13, Ex. I.) On or around January 10, 2012, Gurstel received the garnished funds from Wells Fargo. (*Id.* ¶ 13.) The amount garnished was $3,109.87 and came from Mark Racek's bank account that he held jointly with Mary Racek. (Vavrek Decl. ¶¶ 3, 6, 7, Exs. 2, 5, 6.) The joint account contained wages earned by Mary Racek. (Vavreck Decl. ¶ 4, Ex. 3.)[2]

Plaintiffs brought the present lawsuit on February 13, 2012. (Compl.) On February 24, 2012, Gurstel acknowledged that all but approximately $1,000 was traceable to Mary Racek's wages, but requested that Plaintiffs' attorney produce additional Wells Fargo bank statements to allow Defendants to trace the remainder of the garnished funds to Mary Racek's wages. (Seamans Aff. ¶ 5, Ex. D.) On March 8, 2012, Gurstel released $2,071.71 of the garnished funds that it believed were traceable to Mary Racek's wages. (Seamens Aff. ¶ 6, Ex. E.) On March 9, 2012, Plaintiffs' attorney sent Gurstel a copy of an additional bank statement. (*Id.* ¶ 7.) On March 12, 2012, the remaining garnished funds were sent to Plaintiffs' attorney. (*Id.* ¶ 7, Ex. F.)

---

[2]   Plaintiffs assert that all deposits into this account made during the two months prior were Mary Racek's wages, but the source of a deposit of $655 made on October 11, 2011 is not identified.

In the present action, Plaintiffs assert two causes of action:  (1) violation of the FDCPA (Count I); and (2) conversion (Count II).  (Compl. ¶¶ 27-29, 30-35.)  Defendants now move for summary judgment, arguing both that Plaintiffs have failed to establish any violation under the FDCPA and that Plaintiffs' conversion claim fails as a matter of law because Defendants were lawfully exercising a state-law remedy against the garnished funds.[3]  Plaintiffs also move for partial summary judgment on liability for their conversion claim and for a violation of the FDCPA, arguing that Defendants had no lawful justification for retaining the garnished funds.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

---

[3]   Asset separately argues that it is entitled to summary judgment on Plaintiffs' FDCPA claim because it did not exercise control over Gurstel's actions.

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Cross-Motions on Liability

There is no dispute that a judgment creditor may serve a garnishment summons on a garnishee, and attach funds in a joint account to satisfy the debt of an account holder even though not every account holder is a judgment debtor. *Savig v. First Nat'l Bank of Omaha*, 781 N.W.2d 335, 341 (Minn. 2010). There is also no dispute that account holders bear the burden of establishing net contributions to a joint account during a garnishment proceeding, and that a judgment debtor, initially, is presumed to own all of the funds in a joint account. *Id*. at 347, 348. Thus, the parties' dispute boils down to whether and at what point, as a matter of law, Plaintiffs rebutted the presumption that funds in the garnished account belonged to Mark Racek such that Defendants are liable to Plaintiffs for failing to release garnished funds sooner than they did. A related question is whether Defendants had a lawful justification for retaining what turned out to be Mary Racek's wages.

In support of their motion, Plaintiffs contend that after Defendants garnished funds in the joint account, Plaintiffs submitted proof demonstrating that all of the funds in the joint account were contributed by Mary Racek, that Defendants did not object to the proof submitted, and that Defendants improperly retained Mary Racek's money. Plaintiffs argue that Defendants' actions amounted to conversion because, after Plaintiffs submitted the required proof, Defendants had no lawful justification to retain Mary Racek's funds and should have released the funds immediately. Plaintiffs also argue that Defendants violated the FDCPA as a result of the conversion of Mary Racek's assets. Defendants, on the other hand, argue that they are entitled to summary judgment because Plaintiffs did not rebut the presumption that Mark Racek owned all of the funds in the joint account during the garnishment proceeding, that Plaintiffs failed to follow the garnishment procedures and methods to secure the release of the funds, and that any delay in releasing the garnished funds was due to a bona fide error.

The Court concludes that the evidence in the record is sufficient to raise a factual issue as to whether Plaintiffs rebutted the presumption that the funds in the account belonged to Mark Racek. Specifically, Plaintiffs have submitted evidence demonstrating that they notified Gurstel that Defendants had garnished Mary Racek's wages. Specifically, there is evidence in the record that Plaintiffs' attorney called Mr. Heino, a Gurstel attorney, and explained that the garnished funds belonged to Mary Racek. In addition, Plaintiffs' paralegal sent two e-mails with relevant documents attached that demonstrated that the account contained Mary Racek's wages. While Plaintiffs appear not to have transmitted the information regarding Marcy Racek's wages per the

instructions in the exemption notice, Plaintiffs point to evidence that Mr. Heino simply failed to open the e-mails or the attachments containing the information. As a consequence, the information regarding the Raceks' joint account was not entered into Gurstel's collection notes, thereby allowing Gurstel to secure the release of the funds. This evidence could lead a reasonable juror to conclude that Plaintiffs did forward sufficient information to demonstrate that Defendants had garnished the wages of a non-debtor, and thus sufficiently rebutted the presumption that all of the funds in the joint account were contributed by Mark Racek. If a jury does determine that Plaintiffs rebutted the presumption, it could also reasonably determine that by not immediately releasing the funds, Defendants unlawfully retained Mary Racek's funds so as to be liable for conversion and a violation of the FDCPA.[4]

Defendants also argue that their failure to object to Mark Racek's exemption form or to release the garnished funds sooner was the result of a bona fide error. Section 1692k(c) provides an exception to FDCPA liability for unintentional violations that "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To demonstrate a bona fide error under the FDCPA, "a debt collector must prove by a preponderance of the

---

[4] The Court notes Defendants' position that Plaintiffs did not properly complete and transmit an exemption form to Wells Fargo and Gurstel, did not properly identify an exemption listed on the exemption form, and did not properly serve Asset or Wells Fargo in accordance with garnishment procedures under Minnesota law. While acknowledging that Defendants have submitted evidence calling into question Plaintiffs' strict compliance with certain garnishment procedures, Defendants have not demonstrated the absence of any genuine issue of material fact so as to entitle them to summary judgment.

evidence that its FDCPA violation was unintentional and was caused by an objectively bona fide error (i.e., one that is plausible and reasonable) made despite the use of procedures reasonably adapted to prevent that specific error." *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420 (8th Cir. 2008).

Here, Gurstel asserts that, given the statutory framework, it has policies that define a clear process for the intake, logging, and review of exemption claims received and that its policies are reasonably adapted to avoid levying on funds that are protected. Plaintiffs submit that Defendants cannot assert a plausible bona fide error defense. Specifically, Plaintiffs contend that there were several independent errors with respect to the collection log maintained for Mark Racek and that these errors were not "bona fide" because Gurstel has not pointed to any policy or procedure that would have ensured that all communications (like the e-mails sent to Mr. Heino) were received, reviewed, and accurately recorded in the collection logs upon which employees of Gurstel rely.[5] Plaintiffs further submit that the presence of multiple errors in Mark Racek's file suggest that no reasonably adapted policy exists.

After reviewing the evidence in the record, the Court concludes that there are fact issues remaining with respect to whether the alleged FDCPA violation resulted from a

---

[5] Plaintiffs point out that Mr. Heino acknowledged that he often ignored incoming e-mails. (Vavreck Decl. ¶ 16, Ex. 15 at 36.) Also during his deposition, Mr. Heino stated: "I would say that every attorney had their own practice with regard to the review and logging of emails." (*Id.*)

bona fide error and, in particular, whether Gurstel has procedures in place that are reasonably adapted to prevent the error.

### III.    Asset's Liability

Asset separately argues that it is entitled to summary judgment on Plaintiffs' FDCPA claim because it did not exercise control over the alleged conduct of Gurstel. In support, Asset relies on *Cassady v. Union Adjustment Co.*, Civ. No. 07-5405, 2008 WL 4773976, at *6 (N.D. Cal. Oct. 27, 2008). The court in *Cassady* granted summary judgment in favor of a collection agency in an FDCPA action where the plaintiff did not offer evidence to show that the collection agency exercised control over the law firm it hired to handle legal collection efforts. *Id*. Asset, however, does not cite to any similar authority in this district, and Plaintiffs point out that the *Cassady* decision has been criticized by other courts. *See, e.g.*, *Okyere v. Palisades Collection, LLC.*, Civ. No. 12-1453, 2013 WL 1173992 (S.D.N.Y. Mar. 22, 2013) (respectfully disagreeing "with the imposition of a requirement that an FDCPA plaintiff show specific acts of 'control' when considering a debt collection company's liability for its attorney's actions" and citing cases that specifically note that vicarious liability may attach in the context of an attorney-client relationship where both the attorney and client are debt collectors). The Court determines that Asset has not demonstrated that it is entitled to summary judgment on this point.

## CONCLUSION

While the Court concludes that fact issues remain in this action, the Court also notes that the uncertainty of the outcome at trial, in addition to what appears to be a

relatively small amount of potential damages, makes this case suitable for settlement. The Court is hopeful that the parties will contact the Magistrate Judge in this case and schedule a settlement conference. On the record before the Court, a settlement prior to trial would serve the interests of both parties.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. [19]) is **DENIED**.

2. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. [14]) is **DENIED**.


Dated:  September 11, 2013         s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge